No. 45,175

James E. Collins, *Appellant,* v. Jack Merrick and O. L. Douglas, *Appellees.*

(448 P. 2d 1)

Opinion filed December 7, 1968.

*Abraham Weinlood,* of Hutchinson, argued the cause, and *Bill R. Cole,*

*D. Stewart Oswalt, John H. Shaffer* and *Porter K. Brown,* all of Hutchinson, were with him on the brief for the appellant.

*Camilla Klein Haviland,* of Dodge City, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: On October 5, 1957, six enterprising race enthusiasts, five of whom operated race tracks, formed a partnership under the name of Grand National Jalopy Promotions, to manage, promote and conduct annual National Champion Jalopy Races. Four of the partners, including Jack Merrick and O. L. Douglas, the defendants herein, each had a 20% interest in the enterprise, while the plaintiff, James E. (Jim) Collins, together with Verne Hamilton, the only partner not owning a track, were to hold a 20% interest jointly. The partners were to contribute whatever capital was required and were to share profits and bear losses in the proportions mentioned.

The first race was held in Oklahoma City and resulted in a loss. Thereupon the partners transferred the race to the benign and friendly atmosphere of the fair city of Hutchinson, where the event was kindly received and has consistently shown a profit.

One of the partners, a Mr. Ray Lavely, dropped out of the partnership in 1958, and Mr. Hamilton withdrew therefrom in 1959. Neither man asked anything for his proportionate interest in the partnership. In the fall of 1960, after the race for that year had been concluded, Mr. Merrick wrote the other three remaining partners, declaring the partnership of Grand National Jalopy Races dissolved, and remitting to them their shares of the 1960 profits together with the modest amount of capital each had contributed. At this juncture Mr. Eber Higgins, a third partner, faded from the scene without evidence of further compensation.

In the letter sent to the plaintiff, Mr. Merrick offered a 15% interest in a new partnership of Merrick, Douglas and Collins, and the races held in 1961 and 1962 were both conducted by the new partnership on this basis. On October 17, Merrick addressed a letter to Collins enclosing a check which represented Collins' share of profits from the 1962 jalopy race, plus the return of a $300 deposit advanced by Collins in 1961. In the letter, Merrick advised Collins that his association with the National Jalopy Championship was terminated, apparently because Collins no longer had a race track.

Following receipt of this letter, Collins sought legal advice. The

sporadic exchange of correspondence which thereafter ensued between counsel for Collins and Merrick proved to be fruitless and Collins thereupon filed this action to dissolve the partnership, to obtain an accounting, and for other equitable relief.

It should be pointed out at the beginning that the trial court found, in a well-reasoned memorandum opinion, that the original partnership formed by the six entrepreneurs in 1957 was terminated by agreement and by the withdrawal of retiring partners. The court also found that the arrangement existing between Merrick, Douglas and Collins in 1961 and 1962 was a partnership at will, which was effectively terminated by the notice given Collins on October 17, 1962, that the partnership was terminated. These findings of the trial court find substantial support in the record and must be recognized, on appeal, as controlling.

It is conceded by all the parties that the partnership existing between Merrick, Douglas and Collins had no physical property or tangible assets. However, the plaintiff, Collins, has contended throughout this lawsuit, and now urges on appeal, that the good will which appertained to the promotion and operation of the Grand National Jalopy Race each year constituted a partnership asset; that his 15% interest in that asset was appropriated by the defendants, Merrick and Douglas; that the value of his 15% share of the good will amounts to $5,000; and that he is entitled to recover that amount from the defendants.

We believe it may rightly be said that whatever good will may attach to a business operated by a partnership is generally considered to be part of the property and assets of the firm. (40 Am. Jur., Partnership, § 109, pp. 203, 204; 68 C. J. S., Partnership, § 69, p. 501.)

It is generally held, also, that the good will of a partnership is an asset for which a partner must account when he appropriates the same to his own use. (65 A. L. R. 2d 521, *et seq.*) However, the existence of good will must be established as a fact by the partner alleging it, as well as what its value may be. In 68, C. J. S., Partnership, § 69, p. 501, we find the principle stated in the following language:

". . . Whether or not partnership good will exists in any particular case will depend on the particular facts and circumstances involved, and one test for determining its existence is whether a reasonable man would pay anything for it. . . ."

The trial court recognized the foregoing principles by pointing out in its memorandum opinion that when the partnership of Merrick, Douglas and Collins was terminated by Merrick's written notice, Mr. Collins became "entitled to his share of any value which was attributable to the event name of 'National Championship Jalopy Race' and any good will." The court went on to say, however, that the evidence was not sufficient to show, by a preponderance thereof, that the profits of the event were attributable to the use of the name, or that there was any good will for which Collins should be compensated.

The latter finding is challenged by the plaintiff, who denounces it as arbitrary and contrary to all of the evidence. We are unable to agree with this characterization.

It is true that the two witnesses called by plaintiff to testify as to value, as well as the plaintiff himself, placed a value of $5,000 on the plaintiff's 15% interest in the partnership's good will. One of the two witnesses was the same Mr. Hamilton who had previously withdrawn as a partner without asking compensation for his interest in the partnership, while the other witness was a race track operator from Salina. It is true, also, there was no other evidence going to value other than testimony by Merrick himself, who stated the National Jalopy Championship was a matter of some value, as an intangible asset, if not weathered out, but the name itself, was not particularly of value.

Despite the testimony offered on the question of good will value, we would hardly be justified in setting aside the trial court's negative finding. The rule which prevails in this state relative to negative findings is succinctly stated in *In re Estate of Winters*, 192 Kan. 518, 389 P. 2d 818, as follows:

"An appellate court will seldom set aside a negative finding of a trial court if the evidence is limited in quantity and its weight and credibility may be questionable, or if the evidence may be disregarded for any reason." (Syl. ¶ 1.)

Further consideration was given to this principle in the recent cases of *In re Estate of Curtis*, 193 Kan. 431, 394 P. 2d 59, and *Schroeder v. Richardson*, 196 Kan. 363, 411 P. 2d 670. In considering the testimony of certain witnesses which, in the Curtis case, was alleged to be uncontradicted, this court said:

"But whatever such testimony might be said to evidence, if credited, it was the function of the trial judge who saw the witnesses and observed their manner and demeanor on the stand, to assess the weight and value of their testimony. And such he must do in the light of all the other facts and circum-

stances in evidence and occurring at the trial. It was said in *In re Estate of Johnson,* supra:

"'Appellate courts cannot nullify a trial court's disbelief of evidence (*Kallail v. Solomon,* 146 Kan. 599, 602, 72 P. 2d 966), nor can they determine the persuasiveness of testimony which a trial court may have believed. The appearance and demeanor of a witness, which appellate courts never have the opportunity of observing and which cannot be transmitted to the cold records of this court, may be, and sometimes are, far more persuasive than positive testimony.' (pp. 439, 440.)

"Although a court, as the trier of the facts, may not refuse arbitrarily or capriciously to consider the testimony of any witness, neither is it obligated to believe or accept as true the testimony of any witness, even though it be uncontradicted. (*Briney v. Toews,* 150 Kan. 489, 95 P. 2d 355; *Johnson v. Soden,* 152 Kan. 284, 103 P. 2d 812.) If the trial court, in its honest opinion, considers testimony to be unreliable it need not give that testimony effect (*In re Estate of Johnson,* supra). . . ." (pp. 435, 436.)

In the instant case, not only was the trial court in a favorable position to observe the witnesses who testified as to the value of good will, but it had also received evidence that three members of the original partnership venture, including the witness Hamilton, himself, had sought no compensation for partnership "good will" upon their withdrawal from the partnership. This evidence, together with testimony that the partnership possessed no physical property or assets, but used Merrick's personal equipment, and that the race each year was a gamble, may well have contributed to the trial court's disbelief of testimony that 15% of the "good will" appertaining to this once-a-year race was worth the substantial sum of $5,000. We believe what was said in *Kallail v. Solomon,* 146 Kan. 599, 72 P. 2d 966 is pertinent on this point:

". . . We are without power to nullify the disbelief. The effect of defendant's motion as to the special findings is that there was no evidence to support the disbelief. The position is untenable. The disbelief may have resulted from the demeanor of defendant and his witnesses, *and from the very nature of the evidence produced by them.* . . ." (p. 602.) (Emphasis supplied.)

The plaintiff advances the further contention that he is entitled to share in the profits arising from the jalopy contests held from 1963 to 1967, inclusive. This proposition is without merit. Inasmuch as Collins contributed nothing to the annual race held in each of those years so far as capital, physical assets or personal services are concerned, the only basis on which he might predicate such a proposal is that his share of the "good will" was being used to stage the races. Thus his argument is unconvincing in view of the trial

court's finding, which we uphold, that the plaintiff had failed to establish the existence of good will possessing substance or value.

A fair statement of the rule applicable to a situation of this kind is set out in 40 Am. Jur., Partnership, § 390, pp. 398, 399:

"The right of a partner to share in the profits earned by the continuation of a partnership business after the dissolution of the firm is founded upon the use to which such partner's interest in the capital of the firm has been put in earning these subsequent profits, and if the partner claiming an interest in the profits earned after the dissolution of the partnership has no interest in the assets or capital of the firm after dissolution, he is not entitled to share in the profits earned. The same result is reached where the complaining partner's interest in the capital is negligible. . . ."

See, also, *Urzi v. Urzi,* 140 C. A. 2d 589, 295 P. 2d 539; *Frey v. Hauke,* 171 Neb. 852, 108 N. W. 2d 228; and *Essay v. Essay,* 175 Neb. 730, 123 N. W. 2d 648.

The defendant directs our attention to a clause appearing in the 1957 agreement to the effect that no partner, for a period of ten years, should engage in promoting, conducting or managing any other races similar to the National Championship Jalopy Races unless each of the other partners participates therein or should consent thereto in writing. It is argued that this clause held over from the 1957 partnership agreement, becoming a restrictive part of the arrangement made between Merrick, Douglas and Collins in October of 1961.

We deem this clause of no controlling significance in this lawsuit, in view of the trial court's finding that the original partnership agreement had been terminated. Moreover, the present action is not bottomed on breach of covenant.

No error appearing in the judgment entered by the court below, the same is hereby affirmed.